# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | NO. 04-CV-12582-RCL |
| | : | |
| AN INTEREST IN THE REAL | : | |
| PROPERTY LOCATED AT 301 ADAMS | : | |
| STREET, QUINCY, MASSACHUSETTS, | : | |
| ET ALS., | : | |
| Defendants | | |

## <u>NOTICE OF TRANSFER OF CLAIM</u>

Now comes Private Capital Group, LLC ("Private Capital") through its Counsel, and hereby provides the Court with notice of its purchase of that certain promissory note dated September 19, 2003 and mortgage securing said note with real estate and improvements located at 1548 Dorchester Avenue, Boston, Massachusetts.  A Verified Claim (the "Claim") was filed in this case by its predecessor in interest, GreenPoint Mortgage Funding, Inc. ("GreenPoint") on or about December 15, 2005.  A copy of the Claim is attached hereto as <u>Exhibit A.</u>  A copy of the Assignment of Mortgage from GreenPoint to Private Capital is attached hereto as <u>Exhibit B</u>. Due to the unconditional sale, all rights, title and interest in and to the previously filed claim has been transferred to:

Private Capital Group, LLC
One Old Country Road, Suite 330
Carle Place, New York 11514

Private Capital hereby requests that it be substituted for GreenPoint as the record holder of the Claim in question for all purposes in these proceedings, including the right to payment of the Claim.

PRIVATE CAPITAL GROUP, LLC
By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

/s/ Catherine V. Eastwood
Catherine V. Eastwood (BBO#641665)
180 South Main Street
Providence, RI 02903
(401)861-8200/FAX(401)861-8210
cve@psh.com

Dated:  July 27 , 2006

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of July, 2006, electronically filed a Notice of Transfer of Claim.  I further hereby certify that upon receipt of the notice of electronic service of the Notice of Transfer of Claim, a copy of said document will be served by first class mail, postage prepaid, to any of the parties listed below not noted as having received electronic service, said service being made on the  27th day of July, 2006.

Kristina E. Barclay, Esquire
U.S. Attorney's Office
John J. Moakley US Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210
**Counsel for Plaintiff**

Jeffrey A. Denner, Esquire
R. Bradford Bailey, Esquire
Carol A. Fitzsimmons, Esquire
Denner O'Malley, LLP
Four Longfellow Place, Suite 3501
Boston, MA 02114
**Counsel for Defendant 301 Adams Street**

William M. Cowan, Esquire
Kristen S. Scammon, Esquire
John J. Tangney, Jr., Esquire
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo
One Financial Center
Boston, MA 02111
**Counsel for Broadway Enterprises, Inc.**

Peter L. Ettenberg, Esquire
Gould & Ettenberg
370 Main Street
Worcester, MA 01608
**Counsel for Defendant $67,561.88**

Thomas Peter R. Pound, Esquire
John R. Skelton, Esquire
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
**Counsel for Asian American Bank & Trust Company**

Stephen M. Scolnick, Esquire
Law Offices of Russo & Scolnick
2 Oliver Street, 8th Floor
Boston, MA 02109-4901
**Counsel for Steven A. Rubin**

Veronica C. Viveiros, Esquire
Harmon Law Offices, P.C.
150 California Street
P.O. Box 610389
Newton, MA 02458
**Counsel for Defendant Aurora Loan
Services**

                                        /s/ Catherine V. Eastwood

868873_1/4867-5

# EXHIBIT A

1
2
3
4
5
6

GREENPOINT MORTGAGE FUNDING, INC.
100 Wood Hollow Drive
Novato, CA 94945
Tel (415) 878-5390
Fax (415) 878-3593

In Pro Per for GREENPOINT MORTGAGE
FUNDING, INC.

7
8

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

9
10
11
12
13
14
15
16

UNITED STATES OF AMERICA,

        Plaintiff,

        vs.

AN INTEREST IN THE REAL
PROPERTY LOCATED AT 301 ADAMS
STREET, QUINCY, MASSACHUSETTS,
et al.,

        Defendant.

NO. 04-12582-RCL

VERIFIED CLAIM OF INTEREST IN
REAL PROPERTY

17

**VERIFIED CLAIM OF GREENPOINT MORTGAGE FUNDING, INC.**

18

TO:  PLAINTIFF AND ITS ATTORNEYS OF RECORD:

19
20
21
22

      PLEASE TAKE NOTICE that GREENPOINT MORTGAGE FUNDING, INC.,

hereinafter "GPM" has a security interest in the defendant property located at 1548 Dorchester

Avenue, Boston, Massachusetts.

23
24
25
26
27
28

      1.     On or about September 19, 2003, TINA LE, executed and delivered to GPM, a

promissory note, hereinafter the "NOTE" in the amount of $560,000.00 attached hereto as

Exhibit A.  Said NOTE was secured by a Mortgage, hereinafter the "MORTGAGE" attached

hereto as Exhibit B.  Further, the current total outstanding and due is $517,004.65 as of

December 15, 2005 based on the Payoff Statement attached hereto as Exhibit C.

1
2        2.      Wherefore, GPM hereby files this VERIFIED CLAIM with this Court stating that
3
it has an interest in the DEFENDANT REAL PROPERTY to the extent of its lien as shown by
4
the recorded MORTGAGE or the actual amount of credit outstanding.
5
6        DATED: December  15  , 2005              Respectfully submitted,
7
8                                                ON BEHALF OF CLAIMANT GREENPOINT
9                                                MORTGAGE  FUNDING, INC.
10
11                                               By
12                                                  IRENE D. GILBERT
13                                                  Senior Vice President
14
15
16
17
\Legal\TB\USA v. 301 Adams (Tina Le) 12.05.doc
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERIFICATION

I, IRENE GILBERT, hereby state that I am a Senior Vice-President of GREENPOINT MORTGAGE FUNDING, INC., hereinafter "GPM". I am designated as its agent to respond to the Complaint for Forfeiture in Rem filed by the United States of Ameica, Case #04-12582-RCL.

I certify under penalty of perjury under the laws of the State of California that I have reviewed the foregoing VERIFIED CLAIM OF INTEREST IN REAL PROPERTY and that the facts stated in said CLAIM are true and correct based on my own personal knowledge or on information and belief wherever indicated.

Executed this 15ᵗʰ day of December, 2005, at Novato, Ca.


_____
IRENE GILBERT
Senior Vice-president


\Legal\TB\USA v. 1548 Dorchester, MA Verification 12.05.doc

*True and certified copy of the original*

*Signature*

### ADJUSTABLE RATE NOTE
### (3 Year Treasury Index -Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

September *19*, 2003                                    Boston, Massachusetts

1548 Dorchester Avenue, Boston (Dorchester District), Massachusetts 02122
[Property Address]

**1.     BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $560,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is GreenPoint Mortgage Funding, Inc.  I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.     INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.875%. The interest rate I will pay will change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay before default described in Section 7(B) of this Note. After default the interest rate I will pay will be at the yearly rate of 18%.

**3.     PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on November 1, 2003. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on October 1, 2018, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2300 Brookstone Centre Parkway, Columbus, GA 31309 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $4,687.87. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.     INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of October, 2006, and on that day every 36th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of three years, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE NOTE - 3 YEAR ARM                           Loan No. 0108689274
(Page 1 of 3)



**EXHIBIT _A_**

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding 3.625% to the Current Index. The Note Holder will then round up the result of this addition to the nearest one-quarter of one percentage point (0.25%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the First Change Date will not be greater than 11% or less than 3.75%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2%) from the rate of interest I have been paying for the preceding 36 months. My interest rate will never be greater than 11% and will never be less than 3.75%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayment. In the event that I make Prepayment voluntarily or involuntarily by acceleration by Lender due to my default during: the first year of the term of this Note, I agree to pay to the Lender therewith a prepayment fee equal to three (3%) percent of the amount of the Prepayment; the second year of the term of this Note, I agree to pay to the Lender therewith a prepayment fee equal to two (2%) percent of the amount. of the Prepayment; the third year of the term of this Note, I agree to pay to the Lender therewith a prepayment fee equal to one (1%) percent of the amount of the Prepayment; thereafter, there will be no Prepayment fee.

**6.    LOAN CHARGES.**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)    Late Charges for Overdue Payments,**

If the Note Holder has not received the full amount of any monthly payment by the end of  10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% of my overdue payment of principal and interest and any Escrow Items  I am required to pay to the Lender under the terms of the Mortgage securing this Note. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**MULTISTATE ADJUSTABLE RATE NOTE - 3 YEAR ARM**
            **(Page 2 of 3)**

**(C)    Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.

**(D)    No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)    Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Witness:

_Rachel D Baime_

_Tina Le_

*[Sign Original Only]*

267614

MULTISTATE ADJUSTABLE RATE NOTE - 3 YEAR ARM
(Page 3 of 3)

CERTIFIED TO BE A TRUE COPY
RECORDED *9/22/03*
AS INSTRUMENT # *471*
BARRON + STADFELD PC BY
*Melissa Shook*

After Recording Return To:
BARRON & STADFELD, P.C.
50 Staniford Street
Boston, MA 02114
JKB/File No. 20209-232

------------[Space Above This Line For Recording Data]------------

## MORTGAGE

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 9, 11, 16, 17 and 18. Certain rules regarding the usage of words used in this document are also provided in Section 14.

(A)    **"Security Instrument"** means this document, which is dated September *19*  , 2003, together with all Riders to this document.

(B)    **"Borrower"** is Tina Le, of 301 Adams Street, Quincy, Massachusetts.  Borrower is the mortgagor under this Security Instrument.

(C)    **"Lender"** is GreenPoint Mortgage Funding, Inc.  Lender is a New York corporation organized and existing under the laws of New York. Lender's address is 2300 Brookstone Centre Parkway, Columbus, GA 31309. Lender is the mortgagee under this Security Instrument.

(D)    **"Note"** means the promissory note signed by Borrower and dated September *19* , 2003. The Note states that Borrower owes Lender Five Hundred Sixty Thousand Dollars (U.S. $560,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than October 1, 2023.

(E)    **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(F)    **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G)    **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| X Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | X Other Commercial Loan Rider |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

(H)    **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I)    **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J)    **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K)    **"Escrow Items"** means those items that are described in Section 3.

(L)    **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M)    **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(N)    **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

MASSACHUSETTS                                            (page 1 of 10 pages)

**EXHIBIT** *B*

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County of Suffolk, which currently has the address of 1548 Dorchester Avenue, Boston (Dorchester District), Massachusetts ("Property Address"):

See Exhibit A

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.      **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 13. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.      **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

MASSACHUSETTS                                                          (page 2 of 10 pages)

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic -Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5.    These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments' shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 8. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 13 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

MASSACHUSETTS                                                                    (page 3 of  10 pages)

**5.    Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 19 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

MASSACHUSETTS                                    (page 4 of 10 pages)

6.      **Preservation, Maintenance and Protection of the Property; Inspections.**
Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.

Lender or its agent may make reasonable entries upon and inspections of the Property. If It has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

7.      **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's nonoccupancy of the Property as Borrower's principal residence.

8.      **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**
If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly effect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

9. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

MASSACHUSETTS                                            (page 5 of 10 pages)

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amounts of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

10.    **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successor in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

11.    **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 16, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 17) and benefit the successors and assigns of Lender.

12.    **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

MASSACHUSETTS    (page 6 of 10 pages)

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

13.    **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Borrower's address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at anyone time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

14.    **Governing Law; Severability; Rules of Construction.**   This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

15.    **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

16.    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 16, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 13 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

17.    **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

MASSACHUSETTS                                                                (page 7 of 10 pages)

18. **Hazardous Substances.** As used in this Section 18: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal  uses appropriate to the Property and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and ( c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

19. **Acceleration; Remedies. If the Borrower shall default under this Security Instrument or under the Loan, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 19, including, but not limited to, reasonable attorney's fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument and (c) any excess to the person or persons legally entitled to it.**

20. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

21. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_Rachel D Brine_

Tina Le

MASSACHUSETTS

(page 8 of  10 pages)

———————[Space Below This Line For Acknowledgement] ———————

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF SUFFOLK, SS.                                    September *19* , 2003

Then personally appeared the above-named Tina Le and acknowledged the foregoing instrument to be her free act
and deed, before me:

Rachel D. Badine Notary Public
My Commission Expires: 8/14/09

267625

MASSACHUSETTS                                    (page 9 of 10 pages)

December 15, 2005

**PO Box 84013**
**Columbus GA 31908-4013**
**Tel. 800.784.5566**

TO: Greenpoint Mortgage
    Attn Ted Buell
    Fx 415 878 3595



Loan No.: 0108689274

RE:    Loan Type: Commercial
       Mortgagor(s): Tina Le
                     1548 -1558 Dorcheste
                     Boston MA 02122

**Payoff STATEMENT**

THESE FIGURES ARE VALID TO December 16, 2005 AND SUBJECT TO FINAL
VERIFICATION BY THE NOTE HOLDER.  THIS QUOTE MAY BE ADJUSTED DUE TO
ANY CHANGES IN ESCROW DISBURSEMENTS AND/OR PAYMENTS RECEIVED.

THIS LOAN IS DUE FOR THE November 01, 2005 PAYMENT.

UNPAID PRINCIPAL BALANCE....................$       510,065.59
INTEREST AT  5.87500%.......................$         6,225.89
ACCRUED LATE/NSF CHARGES....................$           703.17
FAX FEE ($10.00)/CA($30.00)NV($60.00) DEMAND $            10.00

TOTAL ......................................$       517,004.65

A LATE CHARGE OF $ 234.39 WILL BE ASSESSED AFTER THE CURRENT
PAYMENT IS PAST DUE AND SHOULD BE ADDED TO THE PAYOFF IF RECEIVED
AFTER THAT TIME.

FUNDS RECEIVED AFTER December 16, 2005 WILL REQUIRE AN ADDITIONAL
$ 82.10 INTEREST PER DAY.

THE CURRENT ESCROW BALANCE IS      9,448.91.  THIS BALANCE WILL BE
REFUNDED APPROXIMATELY 10 BUSINESS DAYS AFTER THE LOAN IS
PAID-IN-FULL.

XP011/LEH-020299

EXHIBIT C

*Aviso Importante Para Las Personas Habla Español*
Si usted no entiendo el contenido de esta carta por favor obtenga una traduccion immediamente

**2300 Brookstone Centre Pkwy Columbus GA 31904**
**www.greenpointservice.com**



PO Box 84013
Columbus GA 31908-4013
Tel. 800.784.5566

PAYOFF/CLOSING INSTRUCTIONS

LOAN NUMBER: 0108689274                **GreenPoint** **Mortgage**

*************************************************************************

ATTENTION ACH CUSTOMERS

WE MUST RECEIVE WRITTEN NOTIFICATION FROM YOU 30 DAYS IN ADVANCE
OF THE NEXT DRAFTING DATE IN ORDER TO DISCONTINUE THE DRAFTING
PROCESS.
*************************************************************************
ALL Payoff FUNDS MUST BE IN THE FORM OF A CASHIER'S CHECK/MONEY
ORDER OR AN ATTORNEY'S TRUST CHECK, MADE PAYABLE TO GREENPOINT
MORTGAGE.   NO PERSONAL CHECKS OR WIRE TRANSFERS WILL BE ACCEPTED.

REMIT FUNDS BY REGULAR MAIL TO:      REMIT FUNDS BY EXPRESS SERVICE TO:
GREENPOINT MORTGAGE                  GREENPOINT MORTGAGE
P.O. BOX 84013                       2300 BROOKSTONE CENTRE PARKWAY
COLUMBUS, GEORGIA 31908-4013         COLUMBUS, GEORGIA 31904

IF THIS IS AN ASSIGNMENT, THE PAYOFF FUNDS SHOULD BE SENT TO:

CULLEN & DYKMAN
100 QUENTIN ROOSEVELT BLVD.
GARDEN CITY, NY 11530

THE SECURITY DEED WILL NOT BE CANCELLED OF RECORD UNTIL ALL FUNDS,
INCLUDING THOSE DETERMINED TO BE OWING DUE TO FINAL VERIFICATION,
ESCROW ADVANCES OR RETURNED CHECKS/MONEY ORDERS, ARE PAID TO
GREENPOINT MORTGAGE.   IF ADDITIONAL FUNDS ARE DUE, GREENPOINT MORTGAGE
WILL DEDUCT THOSE FUNDS FROM THE ESCROW BALANCE.   IF FUNDS IN THE
ESCROW ACCOUNT ARE NOT SUFFICIENT TO COVER THE AMOUNT OWED, WE MUST
RECEIVE THOSE FUNDS WITHIN THREE BUSINESS DAYS.

IF THE PROPERTY IS BEING SOLD, PLEASE PROVIDE US WITH THE SELLER'S
FORWARDING ADDRESS.

IF YOU HAVE ANY FURTHER QUESTIONS, PLEASE DO NOT HESITATE TO
CONTACT OUR OFFICE AT 1-800-784-5566.

CUSTOMER SERVICE DEPARTMENT

XP012/LEH-020299

Aviso Importante Para Las Personas Habla Español
Si usted no entiende el contenido de esta carta por favor obtenga una traduccion inmediatamente

2300 Brookstone Centre Pkwy Columbus GA 31904
www.greenpointservice.com

1
2
### PROOF OF SERVICE

I declare that I am over the age of eighteen and not a party to the within entitled action.  I am
employed in the County of Marin, State of California.  My business address is 100 Wood Hollow
Drive, Novato, California 94945.  On **December 15, 2005** I caused a copy of **VERIFIED CLAIM**
**OF INTEREST IN REAL PROPERTY** to be served on all parties in said action, by delivering a
true copy thereof in a sealed envelope addressed as follows:

**Kristina E. Barclay**
**Assistant U.S. Attorney**
**1 Courthouse Way, Suite 9200**
**Boston, MA 02210**

_____  (BY CERTIFIED MAIL) RETURN RECEIPT REQUESTED

_____  (BY OVERNIGHT COURIER) I caused the envelope to be sent via Federal Express.

_X_  (BY MAIL) Being familiar with this firm's collection and processing of documents for
deposit into the United States mail, I caused each envelope to be placed in the United States
mail at Novato, California with FIRST CLASS postage thereupon fully prepaid.

_____  (BY HAND) I caused each envelope to be delivered by hand through FAX & FILE attorney
service.

_____  (BY TELECOPIER) I caused each document to be electronically transmitted
to the following number(s):

_____  (Federal)  I declare that I am employed in the office of a member of the bar of this Court at
whose direction the service was made.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 15th day of
December 2005, at Novato, California.


Ted Buell

# EXHIBIT B

Bk: 39512 Pg: 214

2006 00049270
Bk: 39512 Pg: 214    Doc: AST
Page: 1 of 1    05/02/2006 12:20 PM

**ASSIGNMENT OF MORTGAGE**

**KNOW THAT GREENPOINT MORTGAGE FUNDING, INC., having an office at 265 Broadhollow Road, Melville, New York 11747, Assignor,**
in consideration of the sum of: Ten and 00/100 Dollars ($10.00) and other good and valuable consideration

paid by Private Capital Group LLC, having an office at One Old Country Road, Suite 330, Carle Place, New York 11514,
Assignee,

hereby assigns unto the Assignee, without recourse, representation or warranty of any kind, a certain mortgage, dated September 19, 2003 made by Tina Le to GREENPOINT MORTGAGE FUNDING, INC. in the principal amount of FIVE HUNDRED SIXTY THOUSAND AND 00/100 DOLLARS ($560,000.00) and recorded in the Office of the Clerk of the County of Suffolk on September 22, 2003, Instrument No. 471, covering premises known as 1548 Dorchester Avenue, Boston, Massachusetts 02122. ✱ BK 32823-16263

TOGETHER with the bond(s), note(s) or obligation(s) described in said mortgage and the moneys due and interest due and to become due thereon.

TO HAVE AND TO HOLD the same unto the Assignee, and to the successors, legal representatives and assigns of the Assignee forever.

This Assignment is made and accepted without covenant, express or implied, and without recourse to the Assignor in any event whatsoever.

IN WITNESS WHEREOF, the Assignor has duly executed this Assignment to be effective as of the 23rd day of March, 2006.

GREENPOINT MORTGAGE FUNDING, INC.

By: _____
Thomas H. Harris
Divisional Senior Vice President

STATE OF NEW YORK )
)SS.:
COUNTY OF SUFFOLK )

On the 22 day of March in the year 2006, before me, the undersigned, personally appeared Thomas H. Harris, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

**Attested hereto**

Francis M. Roache
**Register of Deeds**

ROSEANNE RIEDEL
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01RI6054622
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES 02/12/20 07

Ms. Beth Schultz
Partridge, Snow & Hahn
180 South Main Street
Providence, RI  02903